T.C. Memo. 1997-324


UNITED STATES TAX COURT


DOUGLAS R. AND JANE E. PRINCE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

DOUGLAS R. PRINCE, D.D.S., M.S., P.C., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 22467-93, 8457-94.[1]        Filed July 15, 1997.


<u>Richard M. Kates</u>, for petitioners.

<u>James S. Stanis</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined deficiencies in and
additions to petitioners' Federal income tax as follows:

---

[1]    These cases were consolidated for purposes of trial,
briefing, and opinion.

Douglas R. and Jane E. Prince, docket No. 22467-93

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6661(a) |
| 1987 | $76,684 | 19,360 | 4,213 | [1] | 19,171 |

[1] 50 percent of the interest due on the deficiency.

Douglas R. Prince, D.D.S., M.S., P.C., docket No. 8457-94

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| Taxable Year Ending June 30 | Deficiency | Sec. 6651(a)(1) | Secs. 6653(a)(1)/ 6653(a)(1)(A) | Secs. 6653(a)(2)/ 6653(a)(1)(B) | Sec. 6661(a) |
| 1986 | $24,683 | – | 1,234 | [1] | 6,171 |
| 1987 | 40,087 | 2,067 | 2,067 | [1] | 10,022 |

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| Taxable Year Ending Dec. 31 | Increase in Tax | Sec. 6651(a)(1) | Secs. 6653(a)(1)/ 6653(a)(1)(A) | Secs. 6653(a)(2)/ 6653(a)(1)(B) | Sec. 6661(a) |
| 1987 | $7,348 | – | 367 | [1] | – |
| 1988 | 29,345 | 2,935 | 1,467 | – | 7,336 |

[1] 50 percent of the interest due on the deficiency.

Unless otherwise indicated, all section and Code references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[2] the issues to be decided are:

A. <u>Issues With Respect to Petitioners Douglas R. Prince and Jane E. Prince</u>[3]

1. Whether petitioners Douglas R. Prince and Jane E. Prince have substantiated their claimed deduction for certain interest for their 1988 taxable year as a part of a loss carryback to their 1987 taxable year;

2. whether a certain loan from a pension plan is includable in their gross income pursuant to section 72(p) for their 1988 taxable year;

---

[2] The notice of deficiency that was sent to petitioners Douglas R. Prince and Jane E. Prince listed adjustments to income for their taxable years 1986, 1987, and 1988. Respondent, however, determined a deficiency in their income for only taxable year 1987. Prior to and during trial, the parties stipulated all of the adjustments to taxable year 1986 and most of the adjustments to taxable years 1987 and 1988. We note that some of the stipulations are based upon amounts that are different than those set forth in the notice of deficiency.

The notice of deficiency that was sent to petitioner Douglas R. Prince, D.D.S., M.S., P.C. listed adjustments to income for its taxable years ended June 30, 1986; June 30, 1987; Dec. 31, 1987; and Dec. 31, 1988. The parties stipulated most of the adjustments for the taxable years in issue. Additionally, respondent conceded that petitioner Douglas R. Prince, D.D.S., M.S., P.C. is entitled to additional recovery deductions pursuant to section 168, which were not included in the notice of deficiency.

[3] In their petition, petitioners disputed respondent's determinations concerning the alternative minimum tax for taxable year 1987 and the percentage limitations on passive activity losses for taxable years 1987 and 1988. Petitioners, however, make no argument on brief concerning these issues. Consequently, we consider such issues to have been conceded. <u>Rybak v. Commissioner</u>, 91 T.C. 524, 566 (1988).

3.   whether they are liable for additions to tax pursuant to sections 6651, 6653, and 6661 for their 1987 taxable year.

B.   Issues With Respect to Petitioner Douglas R. Prince, D.D.S., M.S., P.C.

1.   Whether certain payments made by petitioner Douglas R. Prince, D.D.S., M.S., P.C. to petitioner Douglas R. Prince are deductible as compensation expenses pursuant to section 162; and

2.   whether petitioner Douglas R. Prince D.D.S., M.S., P.C. is liable for additions to tax pursuant to sections 6651, 6653, and 6661.

FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91.  The parties' stipulations of facts are incorporated herein by reference and are found as facts in the instant case.

During the relevant taxable years, petitioner Douglas R. Prince (hereinafter individually referred to as petitioner) owned all of the stock of petitioner Douglas R. Prince, D.D.S., M.S., P.C., a professional corporation (hereinafter referred to as the corporation) that was organized pursuant to the laws of the State of North Dakota.

At the time the petition in docket No. 22467-93 was filed, petitioners Douglas R. Prince and Jane E. Prince (hereinafter jointly referred to as petitioners) resided in DuPage County, Illinois.  At the time the petition in docket No. 8457-94 was filed, the corporation's principal office was at 358 East First

Street, Dickinson, North Dakota.  The corporation's taxable year was a fiscal year ending June 30 for taxable years ending June 30, 1986 and 1987.  During 1987, however, the corporation changed its taxable year to a calendar year.

During the relevant taxable years, petitioner was an orthodontist who maintained, through the corporation, an orthodontic practice with locations in Dickinson, North Dakota; Williston, North Dakota; Sidney, Montana; Glendive, Montana; and Miles City, Montana.  Petitioner was the only orthodontist in the corporation's orthodontic practice, for which he was paid a salary by the corporation.

In its books and records, the corporation maintained a "Loan and Exchange" account receivable from petitioner (the loan and exchange account).  The corporation made payments to and for the benefit of petitioner for both corporate and personal expenses and increased the amount in the loan and exchange account to reflect the amounts of such payments.  Additionally, the corporation made certain payments to and for the benefit of petitioner that were not from the loan and exchange account.  At the end of the corporation's taxable year, the corporation's accountant classified payments from the loan and exchange account as either corporate expenses or personal expenses.  Generally, amounts that were classified as personal expenses were treated as compensation to petitioner and were reported on petitioner's Form W-2.

On its Federal income tax returns and amended returns, the corporation claimed deductions for compensation payments to

petitioner as follows:

| Taxable Year Ending | Original Return | Amended Return |
|---|---|---|
| June 30, 1986 | $446,781 | no change |
| June 30, 1987 | 379,694 | $364,694 |
| Dec. 31, 1987 | 49,782 | 181,718 |
| Dec. 31, 1988 | 430,002 | no amended return filed |

On their Federal income tax returns and amended return, petitioners included in their gross income compensation payments from the corporation as follows:

| Taxable Year | Original Return | Amended Return |
|---|---|---|
| 1986 | $446,781 | $253,167 |
| 1987 | 344,316 | no amended return filed |
| 1988 | 430,002 | no amended return filed |

During 1988, petitioner sold a rental building in Yorkville, Illinois (the Yorkville building). Petitioner was personally liable for a loan secured by the Yorkville building (the Yorkville loan). At the time of the sale, the interest on the Yorkville loan was in arrears. On their 1988 Federal income tax return, petitioners reported gain on the sale of the Yorkville building and claimed on their Schedule E an interest expense on the Yorkville loan in the amount of $74,723. In the notice of deficiency, respondent determined a loss on the sale of the

Yorkville building but disallowed the interest expense claimed by petitioners.

Prior to and continuing through the relevant taxable years, the corporation maintained the Douglas R. Prince, D.D.S., M.S., P.C. Pension Plan and Trust (the pension plan), in which petitioner was a participant. The pension plan was a qualified trust within the meaning of section 401(a).

On or about March 14, 1986, the pension plan made a loan in the amount of $50,000 to petitioner (the original loan). The original loan, which was secured by petitioner's vested benefit in the pension plan, was to be repaid on April 1, 1988, with interest at the rate of 13.75 percent per annum. On the due date of the original loan, the principal and interest on the original loan were not paid but were instead rolled over into a new loan (the renewed loan). Neither the original loan nor the renewed loan contained a provision for "level amortization" of the principal. At all relevant times, the present value of one-half of petitioner's "accrued benefit" under the pension plan exceeded $100,000.

Petitioners did not include the original loan or the renewed loan in their gross income on their Federal income tax returns for the years in issue. Respondent determined that the renewed loan did not provide for "level amortization" as required by section 72(p)(2)(C) and concluded that the renewed loan did not qualify for the section 72(p)(2)(A) exception. Consequently,

respondent determined that the renewed loan was a taxable distribution to petitioners for their 1988 taxable year pursuant to section 72(p)(1)(A).

On its Federal income tax returns for the taxable years in issue, the corporation characterized certain payments that it made to and for the benefit of petitioner from the loan and exchange account and another account as business deductions. Respondent disallowed certain deductions on the grounds that the corporation did not establish a business purpose for the payments. Consequently, respondent recharacterized the payments as constructive dividends that were not deductible to the corporation (the disallowed corporate payments).[4]

OPINION

The first issue we decide is whether the corporation is entitled to deduct certain disallowed corporate payments as compensation expenses pursuant to section 162.[5] The corporation contends that the disallowed corporate payments are compensation for petitioner's services and, therefore, are deductible pursuant

---

[4]    See appendix for a listing of the disallowed corporate payments and the parties' concessions.

[5]    Respondent has conceded that the corporation is entitled to deduct certain disallowed corporate payments and to depreciate certain other disallowed corporate payments. The corporation also has conceded certain disallowed corporate payments. Accordingly, the corporation seeks to deduct all remaining disallowed corporate payments. See appendix.

to section 162.  The corporation bears the burden of proof.  Rule 142(a).

Section 162(a)(1) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including "a reasonable allowance for salaries or other compensation for personal services actually rendered".  To deduct payments as compensation expenses pursuant to section 162, the taxpayer must establish that the payments are:  (1) Reasonable, and (2) intended to be payments purely for services.  Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1243 (9th Cir. 1983), revg. and remanding on another issue T.C. Memo. 1980-282; Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1058 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973); Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1340 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974); sec. 1.162-7(a), Income Tax Regs.  Whether the taxpayer has shown the requisite intent to treat the payments as compensation is a factual question to be decided on the basis of the particular facts and circumstances.  Electric & Neon, Inc. v. Commissioner, supra.  "Where officer-shareholders, who are in control of a corporation, set their own compensation, careful scrutiny is required to determine whether the alleged compensation is in fact a distribution of profits."  Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1156 (1980).

Applying the foregoing requirements, we must decide whether the corporation has established that it intended to treat the disallowed corporate payments as compensation for petitioner's services. The corporation contends that it mistakenly treated the disallowed corporate payments that were made from the loan and exchange account as corporate expenses instead of personal expense payments. It argues that, consistent with its established practice of treating personal expenses as compensation to petitioner, the disallowed corporate payments should be treated as compensation to petitioner. The corporation argues that its intent is not altered by the fact that the accountant made a mistake in characterizing the payments. Additionally, the corporation contends that petitioner generated all of the income of the corporation and that all of the disallowed corporate payments therefore should be treated as compensation to petitioner.

Based on our review of the record before us, we conclude that the corporation has not established that it intended to treat the disallowed corporate payments as compensation for petitioner's services when the payments were made. The corporation's arguments on brief that the disallowed corporate payments were characterized incorrectly and that petitioner generated all of the corporation's income do not establish the requisite intent to treat the corporate payments as compensation for petitioner's services. The question is whether the

corporation intended the disallowed corporate payments to be compensation to petitioner when they were made. Paula Constr. Co. v. Commissioner, supra at 1059. Moreover, we decide the case in light of what was done, not what might have been done. Id. at 1060 (and cases cited therein).

The record in the instant case lacks any credible evidence of the corporation's intent to treat the disallowed corporate payments as compensation for petitioner's services when the payments were made. For the taxable years in issue, the corporation characterized certain amounts other than the disallowed corporate payments on its Federal income tax returns and petitioner's Forms W-2 as compensation to petitioner, which compensation was included as compensation income on petitioners' Federal income tax returns. However, neither books or records of the corporation nor testimony were offered to establish that the corporation intended to treat the disallowed corporate payments as compensation for petitioner's services. Moreover, the disallowed corporate payments were not characterized as payments of compensation to petitioner on the corporation's Federal income tax returns or on the Forms W-2 that it furnished to petitioner. Finally, the disallowed corporate payments were not reported as income on petitioners' Federal income tax returns. Based on the record in the instant case, we are not persuaded that the corporation intended to treat the disallowed corporate payments as compensation for petitioner's services when the payments were

made.[6]  Accordingly, we hold that the corporation is not entitled

to deduct the disallowed corporate payments as compensation

expenses pursuant to section 162 for the taxable years in issue.

We next consider the issue concerning petitioners' interest

expense deduction for the Yorkville loan.  On Schedule E of their

1988 Federal income tax return, petitioners claimed an interest

expense on the Yorkville loan in the amount of $74,723, which

respondent disallowed.[7]  Respondent contends that petitioners did

not substantiate that interest on the Yorkville loan was paid.

Alternatively, respondent argues that petitioners did not prove

that the interest on the Yorkville loan was paid from the

---

[6]    As we have concluded that petitioners have not established
the requisite intent, we need not address the requirement that
the payment be reasonable.

[7]    At trial, the parties consented to the trial of the issue of
whether petitioners are entitled to deduct the interest expense
on the Yorkville loan for taxable year 1988.  In the notice of
deficiency, respondent disallowed the interest expense in the
adjustment to the category "Rental Loss (Schedule E)" for taxable
year 1988.  We note that the notice of deficiency transposed the
names of the adjustments to income entitled "Constructive
Dividend" and "Rental Loss (Schedule E)".  Additionally, we note
that, during the course of the proceedings in this Court,
respondent asserted that the amounts in issue in the category
"Rental Loss (Schedule E)" should be increased for taxable years
1987 and 1988, but did not file a motion for leave to amend the
answer.  The parties' stipulations as to taxable years 1987 and
1988 are based upon the increased amounts, which are deemed
amendments to the pleadings pursuant to Rule 41(b).  Nonetheless,
as the interest expense on the Yorkville loan was disallowed in
the notice of deficiency, petitioners bear the burden of
establishing that respondent's determination was erroneous.  Rule
142(a).

proceeds of the sale of the Yorkville building. Petitioners argue that they have substantiated their interest expense.

To substantiate their interest payment on the Yorkville loan petitioners rely on petitioner's testimony and an interest statement. At trial, petitioner testified that, at the closing of the sale on the Yorkville building, the interest on the loan, which was in arrears, was paid from the proceeds from the sale. Additionally, the record contains a copy of a statement from First Midwest Bank/Illinois that states, in part: "the interest paid on your loan account in 1988 was $74,722.55." Respondent concedes that the loan account related to the Yorkville loan. Based on the foregoing, we are satisfied that the interest on the Yorkville loan was paid.

Respondent's contention that petitioners did not prove that the proceeds from the sale of the Yorkville building were used to make the interest payment is misplaced. Where there is no allegation that the funds to pay the interest were borrowed from the creditor, there is no requirement that the source of the funds used to make the interest payment be traced. Respondent has not cited, and we are unable to find, any authority to the contrary. Consequently, the failure of petitioners to establish that the sale of the Yorkville building produced sufficient proceeds to pay off the Yorkville loan is immaterial. The only fact petitioners must establish is that the interest on the Yorkville loan was paid, and that fact is shown by petitioner's

uncontroverted testimony which was corroborated by the interest statement from the bank.  Consequently, we conclude that petitioners are entitled to an interest expense deduction in the amount of $74,722.55 for their taxable year 1988.

The next issue to be decided is whether the loan from the pension plan is a taxable distribution to petitioners pursuant to section 72(p)(1)(A).[8]  As stated in our findings, on or about March 14, 1986, the pension plan made a loan to petitioner in the amount of $50,000, which was to be repaid on April 1, 1988, with interest at the rate of 13.75 percent per annum (the original loan).  On the due date of the original loan, the principal and interest on the original loan were not paid but were instead rolled over into a new loan (the renewed loan).  Neither the original loan nor the renewed loan contained a provision for "level amortization" of the principal.  At all relevant times,

---

[8]     Respondent raised this issue at trial, and petitioners waived their objection to the trial of the issue.  Consequently, the issue was tried by consent pursuant to Rule 41(b). Respondent argues that, as the pension issue affects the loss carryback from petitioners' 1988 taxable year to their 1987 taxable year that petitioners raised at trial, petitioners bear the burden of proof as to the issue.  Additionally, respondent contends that, as the notice of deficiency treated the accrued, unpaid interest on the pension plan loan as a taxable distribution to petitioners, the issue is not a new matter for which respondent bears the burden of proof pursuant to Rule 142(a).  We disagree.  In the notice of deficiency, the principal amount of the loan is not included as an adjustment to petitioners' income.  Consequently, we conclude that the issue is a "new matter" within the meaning of Rule 142(a), on which issue respondent bears the burden of proof.

the present value of one-half of petitioner's "accrued benefit" under the pension plan exceeded $100,000.

Section 402(a) provides that, with exceptions not here relevant, distributions from a qualified plan are taxable to the distributee, in the taxable year of the distributee in which distribution occurs, pursuant to section 72. Section 72(p)(1)(A) provides the general rule that loans from a qualified employer plan to plan participants or beneficiaries are treated as taxable distributions. Section 72(p)(2)(A), however, provides an exception to the general rule for any loan to the extent that such loan (when added to the outstanding balance of all other loans from the plan) does not exceed the lesser of: (1) $50,000 (reduced under conditions not here relevant), or (2) the greater of one-half of the present value of participant's "nonforfeitable accrued benefit" under the plan or $10,000.[9] The exception provided in section 72(p)(2)(A) does not apply unless: (1) The loan, by its terms, is required to be repaid within 5 years, sec. 72(p)(2)(B), and (2) "substantially level amortization of such

---

[9] The parties stipulated that, at all relevant times, one-half of the present value of petitioner's "accrued benefit" exceeded $100,000. We, however, conclude that the stipulation is not helpful as sec. 72(p)(2)(A)(2) takes into account only the participant's nonforfeitable accrued benefit. We note that, in any case, the sec. 72(p)(2)(A) exception is limited to loans (when added to the outstanding balance of all other loans from the plan) that do not exceed $50,000. The lesser of (1) $50,000 or (2) the greater of the two specified amounts, sec. 72(p)(2)(A), is an amount equal to $50,000 or less. Accordingly, loans that exceed $50,000 do not qualify for the sec. 72(p)(2)(A) exception.

loan (with payments not less frequently than quarterly) is required over the term of the loan", sec. 72(p)(2)(C). The requirement of section 72(p)(2)(C) applies to loans made, renewed, renegotiated, modified, or extended after December 31, 1986. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1134(b), 100 Stat. 2085, 2484.

Respondent, citing petitioners' concession that the renewed loan does not provide for "level amortization", argues that the renewed loan does not qualify for the section 72(p)(2)(A) exception because it does not meet the section 72(p)(2)(C) requirement of "level amortization". Consequently, respondent contends that the renewed loan is a taxable distribution to petitioners pursuant to section 72(p)(1)(A). Petitioners, however, merely argue that "There is not enough in the record to cause the $50,000 loan to constitute taxable income to the petitioners under Section 72(p)."

Contrary to respondent's argument, section 72(p)(2)(C) provides that the exception pursuant to section 72(p)(2)(A) does not apply unless the loan requires <u>substantially</u> level amortization. The phrase "substantially level amortization" is less stringent than the phrase "level amortization". Although petitioners conceded that the renewed loan did not provide for "level amortization", respondent must still establish that the renewed loan did not have "substantially level amortization" in order to prevent the application of the exception contained in

section 72(p)(2)(A). Nonetheless, we conclude that, even if respondent has not established that the renewed loan did not have substantially level amortization, the renewed loan is a taxable distribution to petitioners pursuant to section 72(p)(1)(A) because the record establishes that the renewed loan exceeded $50,000. At trial, the parties orally stipulated that, when the original loan was due in 1988, the principal amount due; i.e., $50,000, and interest due thereon were not paid but instead were rolled over into the renewed loan. Accordingly, as the amount of the renewed loan was the sum of $50,000 plus the interest that had accrued on the original loan, the amount of the renewed loan necessarily exceeded $50,000. Consequently, we conclude that the renewed loan does not meet the requirement of section 72(p)(2)(A), and we hold that the renewed loan is a taxable distribution to petitioners pursuant to section 72(p)(1)(A) for their 1988 taxable year.[10]

Lastly, we turn to the additions to tax determined by respondent. In the notices of deficiency, respondent determined that petitioners and the corporation are liable for additions to tax pursuant to sections 6651, 6653, and 6661. Petitioners and

---

[10] To the extent that a net operating loss results from the parties' stipulations, the allowance of the Yorkville interest expense deduction, and the inclusion of the renewed loan from the pension plan in petitioners' gross income, petitioners shall be entitled to a loss carryback from their 1988 taxable year to their 1987 taxable year, which the parties must calculate in the Rule 155 computations that we order below.

the corporation bear the burden of proving that respondent's determinations of additions to tax are erroneous. Rule 142(a).

Neither petitioners nor the corporation objected to respondent's requested ultimate findings of fact that the underpayments of tax by petitioners and by the corporation "were due to negligence and/or intentional disregard of rules and regulations." Additionally, they make no argument on brief concerning the additions to tax pursuant to section 6653. Accordingly, we consider petitioners and the corporation to have conceded the additions to tax pursuant to section 6653.

Petitioners and the corporation argue that, to the extent that the threshold requirements of section 6661 are not met, the section 6661 addition to tax does not apply. Neither petitioners nor the corporation makes any argument concerning the additions to tax pursuant to section 6651. Consequently, we consider the additions to tax pursuant to sections 6651 and 6661 (to the extent that the threshold requirements are met) to have been conceded. Rybak v. Commissioner, 91 T.C. 524, 566 (1988). Accordingly, we sustain respondent's determination of additions to tax for petitioners and the corporation.

To reflect the foregoing,

Decisions will be entered

under Rule 155.

APPENDIX

Taxable Year Ending June 30, 1986

| Amount of deduction claimed by the corporation | Purpose of deduction claimed by the corporation | Concessions and Arguments |
|---|---|---|
| $17,695 | other deduction | The corporation conceded entire amount to be the cost of acquiring paintings and not a deductible business expense to the corporation; respondent allowed additional depreciation expenses. |
| 5,497 | other deduction | The corporation conceded entire amount to be petitioner's personal real estate expense and contends that entire amount is deductible as compensation to petitioner. |
| 1,728 | other deduction | The corporation conceded entire amount to be petitioner's personal educational expense and contends that entire amount is deductible as compensation to petitioner. |
| 8,775 | other deduction | The corporation conceded 4387.00 [sic] to be not deductible for the purpose claimed and contends that such amount is deductible as compensation to petitioner; respondent conceded 4387.50. |
| 4,500 | legal and professional fees | The corporation conceded 1,000 to be not deductible for the purpose claimed and contends that such amount is deductible as compensation to petitioner; respondent conceded 3,500. |
| 894 | repairs/supplies | The corporation conceded 594 to be not deductible for the purpose claimed and contends that such amount is deductible as compensation to petitioner; respondent conceded 300. |
| 600 | professional | The corporation conceded 600 |

| | | |
|---|---|---|
| | education expenses | to be petitioner's personal business expense and contends that such amount is deductible as compensation to petitioner. |
| 800 | consulting fees | The corporation conceded 400 to be petitioner's personal business expense and contends that such amount is deductible as compensation to petitioner; respondent conceded 400. |

Taxable Year Ending June 30, 1987

| Amount of deduction claimed by the corporation | Purpose of deduction claimed by the corporation | Concessions and Arguments |
|---|---|---|
| $22,622 | other deduction | The corporation conceded entire amount to be petitioner's personal real estate expense and contends that entire amount is deductible as compensation to petitioner. |
| 38,979 | other deduction | The corporation conceded 19,489 to be not deductible for the purpose claimed and contends that such amount is deductible as compensation to petitioner; respondent conceded 19,489. [1-dollar mathematical error by the parties] |
| 823 | real estate taxes | Respondent conceded entire amount. |
| 3,500 | legal and professional fees | The corporation conceded entire amount to be petitioner's personal expense and contends that entire amount is deductible as compensation to petitioner. |
| 4,600 | consulting fees | The corporation conceded 1,400 to be petitioner's personal expense and contends that such amount is compensation to petitioner; respondent conceded 3,200. |
| 5,000 | furniture and fixtures | The corporation conceded entire amount to be not deductible; respondent allowed |

additional ACRS deductions
pursuant to section 168.

Taxable Year Ending December 31, 1987

| Amount of deduction claimed by the corporation | Purpose of deduction claimed by the corporation | Concessions and Arguments |
| --- | --- | --- |
| $8,075 | other deduction | The corporation conceded entire amount to be petitioner's personal real estate expense and contends that all is deductible as compensation to petitioner. |
| 8,078 | other deduction | The corporation conceded 4,039 to be not deductible for the purpose claimed and contends that such amount is deductible as compensation to petitioner; respondent conceded 4,039.50 [sic]. |
| 9,098 | real estate taxes | The corporation conceded 3,359 to be petitioner's personal real estate taxes and contends that such amount is deductible as compensation to petitioner; respondent conceded 5,739. |

Taxable Year Ending December 31, 1988

| Amount of deduction claimed by the corporation | Purpose of deduction claimed by the corporation | Concessions and Arguments |
| --- | --- | --- |
| $3,292 | other deduction | The corporation conceded entire amount to be petitioner's personal real estate expense and contends that all is deductible as compensation to petitioner. |
| 8,512.93 | other deduction | The corporation conceded entire amount to be the cost of acquiring paintings; |

|  |  | respondent allowed additional depreciation expenses. |
|---|---|---|
| 68,713.07 | other deduction | The corporation conceded 50,361 to be not deductible for the purpose claimed and contends that such amount is deductible as compensation to petitioner; respondent conceded 18,352. |
| 9,961 | legal and professional fees | The corporation conceded 6,161.35 to be an amount that was wire transferred to petitioner and 3,800 to be petitioner's personal business and investment expense.  The corporation contends that entire amount is deductible as compensation to petitioner. |
| 5,064 | repairs/supplies | The corporation conceded entire amount to be payments by the corporation to Western Savings Credit Union and contends that entire amount is deductible as compensation to petitioner. |
| 1,861 | insurance | The corporation conceded entire amount to be petitioner's personal real estate insurance expense and contends that entire amount is deductible as compensation to petitioner. |